**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

GEORGE D. MADGETT,

               Petitioner,

v.                                    Case No. 19-CV-630–NJR

UNITED STATES OF AMERICA,

               Defendant.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Petitioner George D. Madgett's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). For the reasons set forth below, the motion is denied.

## BACKGROUND

### I.    Underlying Criminal Case

On July 19, 2016, Madgett was indicted on one count of possession of a weapon by a felon in violation of Title 18, United States Code, § 922(g)(1) and 924(a)(2). *United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 1. Leading to the indictment, on October 10, 2015, Madgett occupied a vehicle that was pulled over by the Illinois State Police. *Id*. at Doc. 67. During the traffic stop, the police discovered a firearm, and, upon questioning, the occupants of the car implicated Madgett as the gun owner. *Id*. at p. 18.

On April 20, 2018, Madgett pleaded guilty to the indictment. *Id*. at Doc. 37. Preceding his guilty plea, Madgett, through his attorney Daniel Cronin, moved for a

Presentence Investigation Report (PSR) to investigate whether Madgett would qualify for enhanced sentencing under the Armed Career Criminal Act pursuant to Title 18, United States Code, § 924(e). *Id.* at Doc. 21. The motion, following the Supreme Court's decision in *Mathis v. United States,* 126 S. Ct. 2243 (2016), was granted on October 12, 2017. *Id.* at Doc. 23. The initial PSR, filed December 20, 2017, found that Madgett did qualify as an armed career criminal accounting for three prior violent felony convictions. *Id.* at Doc. 29. This finding mandated a statutory minimum of 15 years' imprisonment. *Id.* Madgett objected to the initial PSR arguing that the finding was incorrect because he should not have qualified as an armed career criminal. *Id.* The Court refrained from ruling on Madgett's objection until guilt was adjudicated, through a plea or otherwise. *Id.* at Doc. 33.

According to the Change of Plea transcript from April 20, 2018, before accepting Madgett's guilty plea, the Court questioned Madgett, his lawyer, Mr. Cronin, and the prosecution regarding Madgett's competence to plead guilty at that time. *Id.* at Doc. 67, pp. 4-6; 20-21. The Court also confirmed with Madgett his understanding of the rights he was waiving by opting to plead guilty, including: the right to plead not guilty, the right to a trial by jury of his peers, the right to the presumption of innocence accompanying a trial, the right to counsel during trial, the right to object to evidence offered during the trial and cross-examine witness, the right to present evidence and call his own witnesses, the right to remain silent during trial and avoid self-incrimination, and the right to file pretrial motions. *Id.* at 6-10. Regarding each right, Madgett affirmatively communicated his understanding of his waiver. *Id.* The Court further probed Madgett's understanding

of the consequences of a guilty verdict, including the possible number of years to which Madgett could be sentenced. *Id*. at 15-17. At that time, the Court also confirmed that Madgett understood the Court had yet to determine whether he would be charged as an armed career criminal. *Id*. The Court queried Madgett again, confirming his understanding that after pleading guilty he could not later change his mind. *Id*. at 20. When asked whether he had been pressured or forced in any way to plead guilty, Madgett answered, "[n]o, ma'am." *Id*. at 14.

There was no written plea agreement in Madgett's case. *Id*. at 14-15. During the change of plea hearing, Madgett acknowledged he was fully satisfied with the counsel, representation, and advice he received from defense counsel. *Id*. at 10. Furthermore, Madgett indicated that he understood the potential consequences of his plea. *Id*. at 13.

Once Madgett changed his plea to guilty, the Government responded to Madgett's PSR objection agreeing that Madgett did not qualify as an armed career criminal. *Id*. at Doc. 41. Consequently, on June 6, 2018, a revised PSR finding that Madgett did not qualify as an armed career criminal was filed. *Id*. at Doc. 43. Subsequently, the PSR was revised again on July 13, 2018. *Id*. at Doc. 48. Moreover, the revised PSR found a total offense level of twenty-three and a criminal history category of three, consisting of five criminal history points. *Id*. at Doc. 69, p. 7. The guideline range for such a finding was 57-71 months. *Id*.

On July 11, 2018, in a sentencing memorandum, Madgett's counsel advocated for a 57-month sentence, the low end of the sentencing guidelines. *Id*. at Doc. 44. Alternatively, on the same date, the United States filed a sentencing memorandum

recommending a 120-month sentence, well above the guideline range. *Id*. at Doc. 46. The Government recognized two predicate violent felonies disclosed in the PSR, Madison County Case Number 09-CF-402, and St. Clair County Case Number 14-CF-56. *Id*. at Doc. 41, p. 2. Justifying their recommended sentence, the Government submitted investigative reports from the Cahokia Police Department detailing the events that led to charges against Madgett in St. Clair County. *Id*. at Doc. 46-1. The report detailed a shooting incident involving Madgett at his then-girlfriend's home. *Id*. The report revealed, on January 8, 2014, Madgett's girlfriend hosted several people in her home when Madgett called her into the back room and proceeded to threaten her while furnishing a gun. *Id*. at 6, 13. Madgett's girlfriend eluded him and told the other guests to leave her house. *Id*. at 13. Shortly thereafter, Madgett joined some other guests in the kitchen where an argument began. *Id*. at 20-22. Madgett pulled the gun from his pocket and pointed it at another man in the kitchen. *Id*. The other man and Madgett struggled for the weapon, and, consequently, the man was shot three times. *Id*. After multiple shots were fired, a witness saw Madgett standing over the victim laying on the ground. *Id*. at 21. Madgett pointed his gun at the victim pulling the trigger, only to discover the firearm ran out of bullets. *Id*. The victim and the witness identified Madgett in a photo line-up after the incident. *Id*. [1]

On July 31, 2018, the Court sentenced Madgett to a total term of 84 months' imprisonment, followed by three years of supervised release. *Id*. at Doc. 57. During the

---

[1] Madgett maintained the incident was an accident, asserted that less than three shots were fired, and denied that he stood over the victim laying on the ground (Doc. 9-2, pp. 18-19). Madgett plead guilty to the offense of aggravated battery with a firearm on December 11, 2014 (Doc. 9-1).

sentencing hearing, Madgett made a statement thanking his counsel, Mr. Cronin, for "working hard on [his] case" and making him feel as if he was Mr. Cronin's only client. *Id*. at Doc. 69, p. 33. During the hearing, the Court informed Madgett that he may appeal his conviction if he believed his guilty plea was somehow unlawful or involuntary, or if some other fundamental defect in the proceedings was not waived by the guilty plea. *Id*. at 54. Additionally, the Court instructed Madgett that he has a statutory right to appeal his sentence under certain circumstances, particularly if he believed the sentence was contrary to the law. *Id*.

Afterwards, Madgett filed a direct appeal. *See United States v. Madgett*, 760 F. App'x 466 (7th Cir. 2019). On February 15, 2019, the Seventh Circuit affirmed the sentence imposed by the Court. *Id*.

## II.      Section 2255 Petition

On June 10, 2019, Madgett timely filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Court found that Madgett's petition survived preliminary review under Rule 4 of the Rules Governing Section 2255 Proceedings, and the Government filed a timely response on January 22, 2020 (Doc. 9). Madgett failed to file a reply or a motion for extension until July 20, 2020—when Madgett filed a motion for extension of time to file a reply (Doc. 10). On July 22, 2020, the Court denied Madgett's motion for extension of time, noting that his reply was due before the novel coronavirus was declared a national emergency (Doc. 11).

In his petition, Madgett asks the Court to vacate, set aside, or correct his sentence because his defense counsel, Mr. Cronin, was constitutionally ineffective. Madgett

provides four grounds in support of his claim of ineffectiveness of his counsel:

(1) his counsel was ineffective for failing to object to inaccurate facts presented to the Court during sentencing resulting in a sentence thirteen months higher than the high end of the guideline range;

(2) his counsel was ineffective for failing to move the district court to have the Assistant United States Attorney ("AUSA") Laura Reppert, recuse herself for her preexisting prejudice towards Madgett;

(3) his counsel was ineffective for failing to investigate Madgett's criminal history to properly prepare mitigating evidence regarding his former state convictions; and

(4) his appellate counsel was ineffective for failing to present a Due Process violation claim not to be sentenced based on false or unreliable information.

(Doc. 1).

## DISCUSSION

Title 28, Section 2255 of the United States Code requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255 (2008). Habeas corpus relief under Section 2255 is reserved for extraordinary situations. *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993); *see also Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013). A petitioner can meet the threshold requirement of an extraordinary situation by demonstrating an "error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake*, 723 F.3d at 878-79 (citations omitted). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v.*

*United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## I.      Evidentiary Hearing

An evidentiary hearing for a 28 U.S.C. § 2255 motion is only granted when "the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F. 3d 1063, 1067 (7th Cir. 2006). But if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a hearing is not required. *Id*. For evidentiary hearing consideration, the Seventh Circuit requires a petition made pursuant to 28 U.S.C. § 2255 to "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement; "its absence precludes the necessity of a hearing." *Id*. The specific allegations in the petition and accompanying affidavit must go beyond merely unsupported assertions, as "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing." *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996).

This Court finds that a hearing is not required here because the files and records of the case conclusively show that Madgett is entitled to no relief. The evidence and record do not support a finding that he was unduly prejudiced or that counsel fell below an objective standard of reasonableness in his representation. Accordingly, no evidentiary hearing is required.

## II.     Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is properly raised in a Section 2255 motion because it implicates the Sixth Amendment, which provides criminal defendants

the right to counsel. U.S. CONST. amend. VI. Generally speaking, counsel is ineffective when his or her conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). This Circuit has held that ineffective assistance claims are "best addressed through a motion in collateral proceeding pursuant to § 2255 because the trial record is not developed precisely for the object of litigating or preserving the claim." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) (quotation and citation omitted).

"To demonstrate that the right to counsel was violated by ineffective assistance, a person challenging a conviction must meet the familiar two-part standard set forth in *Strickland*." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland*, 466 U.S. at 688). The petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688); *see also Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (quoting *Harrington v. Richter*, 562 U.S. 86, 88 (2011)).

A petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). When challenging a sentence, "a petitioner must

show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland,* 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence" in the sentence. *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006). It is not enough to show that the errors possibly had "some conceivable effect" on the sentence. *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)); *see also Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) ("[A] party bears a heavy burden in making a winning claim based on ineffective assistance of counsel."); *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987) (explaining that "few petitioners" are expected to be able to pass through the "eye of the needle created by *Strickland*").

The Court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") A petitioner's "failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (citing *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990)).

### A.  Failure to Object to Inaccurate Information at Sentencing Hearing (Ground 1)

Madgett claims his counsel was ineffective by failing to object to inaccurate

information presented at the sentencing hearing (Doc. 1, p. 4). Madgett continues asserting the evidence presented regarding his prior St. Clair County conviction in 2014 for Aggravated Battery and Discharge of a Firearm was inaccurate (*Id.* at p. 6). At the sentencing hearing, the Government represented that the respective shooting incident amounted to a struggle for Madgett's revolver that resulted in Madgett shooting the victim three times. *United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 69, p. 14. Madgett contests these facts and asserts that the incident was an accident involving an automatic weapon that resulted in two shots to the victim rather than three (Doc. 1 at p. 4). Madgett argues that this information would have provided the Court with a better understanding of his underlying criminal history, and that he was prejudiced by his counsel's purported failure because it caused the district court to depart from the guideline range of 57 to 71 months. (*Id.*).

The Government contends that the police reports presented and discussed at sentencing undermine Madgett's unsupported assertions of false information along with his own change of plea hearing in St. Clair County (Doc. 9, p. 9). The police reports advanced by the Government demonstrate that the victim in the 2014 shooting incident was shot three times (Doc. 9, pp. 9-10). *See also United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 46-1, p. 6. Indeed, the police reports further reflect that several witnesses identified Madgett's weapon as a revolver, which requires the trigger to be pulled for each shot unlike an automatic weapon. *Id.* at pp. 12-13; 20-22. During Madgett's change of plea hearing in the St. Clair County matter, Madgett even acknowledged he used a revolver during the incident (Doc. 9-1, p. 6). Moreover, witnesses of the event

claim that Madgett stood over the victim and pulled the trigger, which casts doubt on Madgett's claim that this was an accident. *See United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 46-1, p. 21.

Here, Madgett fails to demonstrate how counsel's failure to object to the purported inaccurate information fell below an objective standard of reasonableness. Madgett does not provide the Court with any specific actions or omissions by his counsel that were unreasonable. Rather, his counsel's failure to object was reasonable because the evidence presented to the Court regarding Madgett's criminal history contradicted Madgett's unsupported assertions. It would be counterproductive to hold an attorney responsible for making frivolous arguments. *See e.g., United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2018) (finding "it would be frivolous for counsel to argue that [defendant] is not a career offender").[2] Madgett's counsel did not act below an objective standard of reasonableness.

Even if his counsel's performance fell below an objective standard of reasonableness, Madgett still fails to show that his counsel's failure caused actual prejudice. Madgett fails to explain how objecting to his unsupported assertions would have impacted the Court's sentencing determination under 18 U.S.C. § 3553(a). Indeed, the Court provided numerous reasons for imposing a sentence above the advisory guideline range. *See United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 58, p. 4 (noting that a significant sentence was appropriate due to several aggravating factors

---

[2] To be clear, the Court knows that Madgett is not arguing that his counsel failed to argue he is not a career offender. The Court uses *Redden*, 875 F.3d 374, to show frivolous arguments are counterproductive.

"(1) the fact that Defendant continues to possess loaded firearms in spite of his status as a felon—in fact, he unlawfully possessed a firearm at least twice before this offense; (2) this is his third felony conviction, committed one month after he was continued on probation after violating terms of supervision; (3) he has promptly returned to criminal activity after previous terms of supervision; (4) his compliance with previous terms of supervision has been poor; and (5) his history is more violent than what his criminal history category reflects"). Accordingly, Madgett's first ground is insufficient to provide relief under Section 2255.

### B.   Failure to Move the Court to Have AUSA Reppert Recuse Herself (Ground 2)

Madgett also alleges his counsel was ineffective by failing to move for a disqualification of AUSA Reppert. According to Madgett, AUSA Reppert held animosity towards him because she previously prosecuted him in the St. Clair County matter and encouraged a substantially higher sentence than Madgett ultimately received (Doc. 1, pp. 7-8). Madgett continues, explaining that this caused AUSA Reppert to act prejudicially towards him, and had the Court known about this *contentious* relationship, the Court may have imposed a sentence within the guideline range (*Id*. at p. 8).

Madgett fails to demonstrate how counsel's failure to move for the disqualification or recusal of AUSA Reppert fell below an objective standard of reasonableness. A motion to disqualify a prosecuting attorney is a "drastic measure and a court should hesitate to impose it except where necessary." *United States v. White*, 2009 WL 10736773, at *4 (N.D. Ill. May 13, 2009) (quoting *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003)); *see*

*also Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170, 176 (7th Cir. 1989) ("disqualification 'is a drastic measure which courts should hesitate to impose except when absolutely necessary'") (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). "Courts have ordered disqualification only in limited circumstances, such as where the prosecutor has an actual conflict of interest based on other representation, where the record contains bona fide allegations of bad faith performance of official duties by government counsel in a civil case, or where the prosecutor will act as a witness at trial." *White*, 2009 WL 10736773 at *4.

The Court has found one district court case from the Seventh Circuit, *McDonald v. United States*, 2017 WL 2840854, at *4 (S.D. Ind. July 3, 2017), where a petitioner's Section 2255 motion alleged ineffective assistance of counsel because the attorney "fail[ed] to seek the recusal of one of the prosecuting U.S. Attorneys on the basis that [he] was previously convicted of robbery by this same prosecutor." In denying the petitioner's motion, the court explained the following:

> Counsel is not ineffective for failing to present an issue, or present a motion, that is certain to fail. *There is no conflict of interest when a prosecutor is involved in two separate prosecutions*. In this regard, [petitioner] has not identified any meritorious, or even colorable, issues that his counsel failed to raise as [petitioner] now wishes he had.

*Id.* (emphasis added). *McDonald* does not help Madgett.

The Court has not found a single case within the Seventh Circuit disqualifying a prosecutor based on a purported conflict of interest arising out of a prosecutor's involvement in a defendant's prior conviction. In fact, "[t]he Court finds few cases where a motion to disqualify an AUSA was made during a § 2255 petition." *Flournoy v. United*

*States*, 2020 WL 1888931, at *5 (N.D. Ill. Apr. 16, 2020).[3]

The Seventh Circuit and its district courts have reviewed allegations of conflicts of interest arising out of prosecutors' prior representation of individuals. *See Havens v. State of Ind.*, 793 F.2d 143, 145 (7th Cir. 1986) (finding that petitioner was not denied a fair trial in violation of the due process clause of the fourteenth amendment when prosecutor, who had previously represented the petitioner in unrelated charges years apart, because the prosecutor "did not disclose information obtained in confidence, nor in any way use information obtained in the attorney-client relationship in his prosecution against [petitioner]"); *United Staets ex rel. Price v. Lane*, 723 F. Supp. 1279, 1285 (C.D. Ill. 1989) (declining to reverse petitioner's conviction when elected State's Attorney of Peoria County, who previously appeared at a hearing on behalf of petitioner, had taken office at the time petitioner entered his guilty plea); *United States v. Goot*, 894 F.2d 231, 233-37 (7th Cir. 1990) (holding that the United States Attorney's Office was not required to be disqualified though the prosecutor previously represented the defendant until he was appointed as the United States Attorney for the Northern District of Indiana because the government sufficiently screened the prosecutor from the prosecution of the defendant).

District courts in the Seventh Circuit have reviewed motions to disqualify a prosecutor based on a purported conflict of interest arising out of a threat to a prosecutor. *See White*, 2009 WL 10736773 at *5 (noting that the court had not found one case "holding

---

[3] The Court has found one case from a district court from the Seventh Circuit finding that a prosecutor had a conflict of interest and ordered the dismissal of the indictment. *See United States v. Gold*, 470 F. Supp. 1336, 1351 (N.D. Ill. 1979). The facts and circumstances in Madgett's case are easily distinguishable. For example, Madgett is not seeking a dismissal of the indictment.

that federal prosecutors cannot participate in a case involving threats against colleagues . . .”). Also, the Seventh Circuit has reviewed allegations of conflicts of interest arising out of a prosecutor’s association to civil matters. *See United States v. Bey*, 781 F. App’x 505, 508-09 (7th Cir. 2019) (acknowledging that the timing of the defendant’s civil suit against the prosecutor “supports the inference that it was an improper delay tactic[,]” and holding that the civil suit did not create a conflict of interest because “there is no evidence that the prosecutors had an improper personal, financial, or political interest in [defendant’s] prosecution, so it would be frivolous to argue that a conflict of interest existed”) (citations omitted); *Matter of Grand Jury Subpoena of Rochon*, 873 F.2d at 175 (holding that Attorney General had no personal interest to justify disqualification from criminal investigation and acknowledging that “existing authority supports the government’s position that the [movant] [in] [favor] [of] [disqualification] must establish that [Attorney General] has a personal interest in the outcome of the civil litigation to justify his disqualification from the criminal investigation”); *United States v. Vlahos*, 33 F.3d 758, 763 (7th Cir. 1994) (vacating a district court’s disqualification of a United States Attorney and the United States Attorney’s Office, and noting that “there [is] no indication in the record that [the] [prosecutor] played any role whatsoever in the underlying civil action here . . .”).

Neither the Supreme Court nor the Seventh Circuit has recognized a due process right to a disinterested prosecutor.[4] In *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787

---

[4] Other courts have recognized a due process right to a disinterested prosecutor. *See, e.g., Wright v. United States*, 732 F.2d 1048, 1057 (2d Cir. 1984) (acknowledging other circuits recognize such claims).

(1987), the Supreme Court explained the "requirement of a disinterested prosecutor," and in its discussion relied on case law applying federal constitutional principles. *Id.* at 807–12. However, the majority did not establish any constitutional standards—but relied on its supervisory authority over the lower federal courts because the matter concerned review of the federal district court's appointment of an attorney to prosecute criminal contempt. *Id.* at 810, n. 21.[5]

The Seventh Circuit recognizes a due process right to be free from vindictive prosecution, <u>but</u> a motion for disqualification based on a prosecutor's purported conflict of interest is different. *See Green v. United States*, 2000 WL 134718, at *4 (N.D. Ill. Feb. 3, 2000) (finding that "[a]lthough, at the time, the Court did not know of the discussions between the prosecutor and a co-operating witness regarding a book deal . . . such evidence merely constitutes cumulative evidence of the prosecutors' misconduct [and] the Court [ ] [does] [not] believe it to be sufficient grounds to vacate, set aside, or correct [p]etitioner's convictions and sentence pursuant to 28 U.S.C. § 2255"). "In order to succeed on a claim of prosecutorial vindictiveness, a defendant 'must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.'" *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (quoting *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003)). "A defendant may do this by showing that the decision to pursue an indictment was not based on the 'usual

---

[5] Notably, Justice Blackmun explained he "would go further, however, and hold that the practice—federal or state—of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process." *Id.* at 814–15 (Blackmun J., concurring).

determinative factors' a responsible prosecutor would consider before bringing charges." *Id.* (citations omitted). "A court must be persuaded that the defendant would not have been prosecuted but for the government's animus or desire to penalize him." *Id.* (citations omitted).

Madgett is <u>not</u> arguing that he would not have been prosecuted but for AUSA Reppert's animus. Madgett argues that "had the district court been aware of the relationship between the facts presented at sentencing, the district court may have stayed within the correctly calculated guideline range of 57 to 71 months" (Doc. 1, p. 5). Thus, construing this as a vindictive prosecution claim does not help Madgett as he still fails to demonstrate how counsel's failure to make the appropriate motion fell below an objective standard of reasonableness or that he was prejudiced.

Further, the record simply fails to support Madgett's assertion that his counsel should have moved to disqualify. It was not AUSA Reppert, but another St. Clair County Assistant State's Attorney, Heidi Epperson, who negotiated Madgett's plea and handled the sentencing proceedings in the relevant state case (Docs. 9-1, 9-2). Then during the sentencing hearing, Madgett told Ms. Reppert that he "hope[s] there's no hard feelings between [them], and [he] think[s] she is a very good prosecutor." *United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 69, p. 33. Madgett's second ground is insufficient to provide relief under Section 2255.

### C.    Failure to Investigate Mitigating Criminal History (Ground 3)

Next, Madgett's claims his counsel was ineffective because counsel failed to investigate his criminal history and properly prepare mitigating evidence to object to the

government's facts and assist the Court in determining whether Madgett would qualify for a departure from the guideline range (Doc. 1, p. 7). Madgett continues asserting that the "Government also used prior convictions that were expunged" (*Id.*).

These arguments are contradicted by the record. The sentencing transcript reveals that Madgett's counsel made ample arguments regarding mitigating evidence. *United States v. Madgett*, Case No. 16-cr-30092-NJR-1, Doc. 69, pp. 25-32. During sentencing, the Court even noted "Mr. Cronin makes very good arguments in mitigation." *Id.* at 40. Reviewing the sentencing transcript, the Court extensively considered the nature and circumstances of Madgett's offense along with his personal and criminal histories and characteristics. *Id.* at 36-46. Whatever mitigating evidence Madgett sought to present regarding his criminal history would unlikely alter the analysis. Also, Madgett's counsel presented objections to the PSR, and there is no indication that the decision to present certain objections and not other objections was an invalid strategic decision. Madgett makes vague statements that information could have been presented or should have been objected. Even if the Court could construe his vague assertions magically into concrete examples, the Court fails to see how it would have resulted in a different outcome. Thus, Madgett's third ground is insufficient to provide relief under Section 2255.

### D.    Failure to Present Due Process Violation on Appeal (Ground 4)

Madgett's final ground is that his counsel failed to subsequently present a due process violation on appeal because of the inaccurate information presented at the sentencing hearing (Doc. 1, p. 8). The Government responds arguing that the issue was forfeited because Madgett's counsel did not object at the sentencing hearing (Doc. 9, p. 20-

21).

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim." *Id.* (citing *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989)).

As previously discussed, Mr. Cronin's decision to not object was reasonable, thus the actions of appellate counsel were also reasonable. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) (acknowledging that "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel"). "Prejudice is established if the issue not raised 'may have resulted in a reversal of the conviction or an order for a new trial.' This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citations omitted).

Madgett has not established that his counsel's performance fell below an objective standard of reasonableness or that his counsel's purported failures caused him prejudice. *Strickland,* 466 U.S. at 688. Consequently, Madgett's fourth ground is insufficient to

provide relief under Section 2255.

## CERTIFICATE OF APPEALABILITY

The Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See* FED. R. GOV. §2255 PROC. 11. A petitioner cannot appeal the denial of a Section 2255 petition unless this Court or the Court of Appeals issues a certificate of appealability. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met when the petitioner demonstrates that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Welch v. United States*, 136 S. Ct. 1258, 1263 (2016). The Court will not issue a certificate of appealability because reasonable jurists would not debate that Madgett has not met either prong of the *Strickland* test for ineffective assistance of counsel.

## NOTICE

If Madgett wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Madgett chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P.

4(a)(1)(A). The deadline can be extended for a short time only if Madgett files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Madgett will only be allowed to proceed on his appeal if he obtains a certificate of appealability. Here, the undersigned District Judge has already declined to issue a certificate of appealability. Thus, Madgett must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Madgett cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Madgett plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Madgett wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The

motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Madgett showing excusable neglect or good cause.

## CONCLUSION

For the reasons set forth above, George D. Madgett's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED.** The Court **DECLINES** to issue a certificate of appealability.

This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED**

to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  April 6, 2021**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**